**FILED**
**Feb 13, 2019**
**01:08 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT GRAY

| | | |
|---|---|---|
| **GREGORY HARDIN,** | ) | **Docket Number: 2017-02-0333** |
| **Employee,** | ) | |
| **v.** | ) | |
| **W.A. KENDALL & CO., INC.,** | ) | **State File Number: 4528-2017** |
| **Employer,** | ) | |
| **and** | ) | |
| **XL INSURANCE AMERICA,** | ) | **Judge Brian K. Addington** |
| **Carrier.** | ) | |

## COMPENSATION HEARING ORDER

This case came before the Court January 24-28, 2019, for a compensation hearing. The legal issues are whether Mr. Hardin's claim is barred by willful misconduct, and if not, the amount of benefits due. The Court holds that Mr. Hardin suffered a compensable injury that was not barred by willful misconduct. As explained below, it awards him past and future lifetime medical benefits, temporary total and permanent partial disability benefits, and reasonable attorney's fees.

### History of Claim

W.A. Kendall hired Mr. Hardin in January 2016 to work as a groundsman on its wood clearing crew.[1] It provided him with a handbook and laborer training manual, and he passed a test associated with the training manual. Later, he received on-the-job training to operate a wood chipper from his foreman, Dusty Shaffer, who instructed him to approach a chipper from the rear in an arc, use both hands to throw the material into the chipper, and continue in the arc while moving away to pick up another pile. These instructions mirrored the instructions in W.A. Kendall's handbook.[2]

A couple of months later, Mr. Hardin and other employees received a written record of instruction on March 16, 2016, for feeding the chipper from behind instead of

---

[1] Mr. Hardin's average weekly wage was $434.89, which provides a $289.93 compensation rate.

[2] The materials reflect that W.A. Kendall's policies were more guidelines than inflexible rules.

1

from the side. The chipper also had stickers that warned operators to follow instructions in the operator's manual, always or constantly to remain in position to operate the control bar to stop the machine if necessary, and to never push items too far into the chipper.

On the day of the accident, January 18, 2017, Mr. Hardin and groundsman Brandon Moore were the only employees at the Wiseman worksite. Mr. Moore operated a leaf blower, while Mr. Hardin chipped brush. Mr. Hardin testified at trial that he picked up a bundle of brush, walked toward the chipper in an arc pattern, and fed it into the chipper. At that time, a vine entangled his right arm. He grabbed his right arm with his left in an attempt to draw back his right arm. The power of the machine caused him to lose his footing and fall face first onto the feed table. As the chipper started to pull his right hand into the rollers, he turned to his back and struck the control bar with his legs, stopping the chipper. He extracted himself from the machine, but the chipper severed his right hand, and he suffered partial amputation of his ear and significant facial lacerations.

Even though he did not witness the accident, Mr. Moore called 911. EMS responder Robert Wells conducted a scene survey while others attended Mr. Hardin. While assessing the scene, he backed away from Mr. Hardin and the chipper. In doing so, he tripped over a brush pile, which was located to the rear of the chipper and near the end of the gravel road leading to the upper reaches of the property. He testified he remembered the brush pile because tripping over it embarrassed him.

EMS transported Mr. Hardin to the hospital where he was hospitalized for five days. W. A. Kendall representatives visited him, but he was anesthetized and unable to provide any statement.

Dr. Benjamin Knox operated on Mr. Hardin and concluded his hand could not be saved. He referred Mr. Hardin to a prosthetist. Dr. Jim Brantner operated on his facial and ear lacerations. Upon release, the hospitalist, Dr. Melissa Powell, restricted Mr. Hardin's use of his right arm until an orthopedist cleared him. The hospital bills totaled $72,482.

After the hospital released him, Mr. Hardin continued to treat with Dr. Brantner, who never placed Mr. Hardin at maximum medical improvement (MMI) but did assign ten percent whole-body impairment for his facial injuries. Mr. Hardin received treatment for his hand injury from Dr. Kent Lord, who placed him at MMI on October 10, 2018, and assigned sixty percent whole-body impairment for injuries to his right arm. Dr. Lord noted Mr. Hardin was a good candidate for prosthesis and felt his permanent restrictions depended on the prosthesis he received.

Mr. Hardin went to Bristol Orthotics and Prosthetics for a prosthesis evaluation. There, Prosthetist and Orthotist Will Graybeal determined Mr. Hardin was a good prosthesis candidate and recommended three different orthotic hands, a body powered

2

arm, a body powered recreational arm, and a myo-electric I-limb arm. Together, they would enable him to do more complex activities, including up to ninety-five percent of the activities he previously performed. Neither Dr. Knox nor Dr. Lord reviewed Mr. Graybeal's recommendations.

W. A. Kendall did not speak with Mr. Hardin before it decided to deny his claim on January 27, and it refused to pay his medical bills or pay temporary disability benefits. On January 31, Mr. Hardin's attorney notified W.A. Kendall of his representation and requested a Panel of Physicians. W.A. Kendall formally filed a Notice of Denial on February 28 alleging Mr. Hardin was guilty of misconduct and had failed to follow a safety rule. It never provided a panel of physicians.

Mr. Hardin hired Charles Coones, a Certified Safety Professional, as an expert to recreate the chipping accident. Based on Mr. Hardin's account, Mr. Coones recreated the event using a similar machine and a fireman dummy. Mr. Coones concluded it was highly probable the chipper pulled him in as Mr. Hardin testified at trial.

W. A. Kendall hired Dr. Richard Ziernicki as its expert.[3] He relied on Mr. Hardin's deposition testimony as to where he was standing when the incident occurred, Mr. Moore's placement of the chipper, and circumstantial evidence from the scene. He concluded Mr. Hardin was not standing where he indicated but was to the rear of the chipper. He determined if Mr. Hardin was standing as he testified in his deposition, his body would have hit the control bar, and if he was not there, he violated W. A. Kendall's safety rules. He assumed that Mr. Hardin tried to flick materials that were in the hopper in violation of the rules.[4]

### Findings of Fact and Conclusions of Law

Mr. Hardin must prove all elements of his case by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6) (2018).

As the threshold issue, Mr. Hardin must prove the compensability of his claim. Specifically, he must show he suffered "an injury by accident . . . arising primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(14). If he establishes an injury, then Tennessee Code Annotated section 50-6-204(a)(1)(A) requires "[t]he employer or the employer's agent [to] furnish, free of charge to the employee, such medical . . . treatment . . . made reasonably necessary by accident[.]"

---

[3] Both experts were well qualified to testify on the matter.

[4] He came to this conclusion based on statements from employees that all the brush had already been cut, and that Mr. Hardin was just throwing rakings into the chipper.

3

Mr. Hardin suffered open and obvious injuries to his right hand, face and ear when the wood chipper pulled him in while working for W. A. Kendall. The Court holds by a preponderance of the evidence that he suffered an injury arising primarily out of and in the course and scope of his employment.

The Court must consider, however, whether Mr. Hardin's compensable injury was barred by willful misconduct. Tenn. Code Ann. § 50-6-110(a)(1). W.A. Kendall has the burden to prove such defense. Tenn. Code Ann. § 50-6-110(b). It must prove Mr. Hardin violated a work rule; he had actual, as opposed to constructive notice of the rule; he understood the danger involved in violating the rule; the bona fide enforcement of the rule by W. A. Kendall; and, the lack of a valid excuse for violating the rule. *Mitchell v. Fayetteville Pub, Utils.*, 368 S.W.3d 442, 453 (Tenn. 2012).

W. A. Kendall asserted that Mr. Hardin violated three rules: 1) he did not feed the wood chipper from the ditch side; 2) he reached his hand into the hopper; and 3) he was not in a position to control the safety bar as he operated the chipper. The Court will analyze each alleged rule violation using the elements set out in *Mitchell*.

Concerning the first rule, W.A. Kendall proved by a preponderance of the evidence that Mr. Hardin had notice. Its handbook and the operation manual stated the correct way to feed a chipper is by approaching it from the rear on the ditch side. Mr. Hardin testified he was aware of the danger in violating the rule and had been written up for violating it once, although he denied actually violating it. But he also testified that at the time of the accident, he was feeding the machine from the rear ditch side.

W.A. Kendall's expert concluded that if Mr. Hardin had been standing center mass on the ditch side of the feed table, his body would have engaged the safety bar as the chipper pulled him into the machine. He compared this to a fish on a taut line. However, the Court finds Mr. Hardin to be credible when he testified that he fought to free himself by grabbing his right arm with his left dominant arm. This would have changed his position and would not have prevented him from moving side to side or up and down as the machine pulled him in. Dr. Ziernicki's reenactment does not allow for such a scenario, only exhibiting a static dummy being pulled into the machine.

Dr. Ziernicki relied on Mr. Hardin's deposition testimony wherein he made an ink slash on a diagram that purportedly showed him "standing" in the middle of the feed table on the chipper's ditch side when he threw brush into it. In Dr. Ziernicki's reenactment, he positioned a man standing in the center of the ditch side of the feed table. However, the evidence does not support such positioning. Mr. Hardin testified and demonstrated that he was not "standing" anywhere but was walking as he fed the machine. Also, the mark on the chipper diagram is not proportional to the size of a human body when standing next to the machine. If it were, Mr. Hardin would be represented by a thin ink slash. Mr. Hardin did not intend to make a mark to indicate his body covered the width of the ditch side of the feed table.

4

W.A. Kendall's training manual and videos show an employee correctly approaching the chipper from the rear on the ditch side. Mr. Hardin testified he did the same on the date of injury.[5]

Even if W.A. Kendall proved Mr. Hardin violated the rule, it failed to prove he did not have a valid excuse for doing so. The Court finds that on the day of the accident, Mr. Hardin fed the chipper as he was trained by his superiors, so if he violated the rule, W. A. Kendall failed to prove he lacked a valid excuse for doing so.

Concerning rule two, Dr. Ziernicki concluded that Mr. Hardin could not have been at the side of the feed table but was behind it reaching into the hopper, which was a violation of the rule. He came to this conclusion based on statements from Mr. Moore and others that there were no big items to throw into the chipper but just small rakings. He then assumed that the small clippings could have not made it to the rollers, and Mr. Hardin reached into the hopper to flick them into the rollers.

There was conflicting testimony on the pile of branches, as some employees did not see a large pile of branches after the accident. However, Mr. Wells testified as did Mr. Hardin that there was large brush still to be chipped at the scene. Mr. Wells recounted his embarrassment from falling in the pile. The Court finds his testimony highly credible. The preponderance of the evidence does not support W. A. Kendall's assertion that Mr. Hardin reached into the hopper because there were only small clippings left to be chipped.

As to the notice about the safety bar, the Court does not consider it a rule, but a warning. Nonetheless, every person who described operating the chipper or demonstrated its use for a video illustrated using both hands to throw brush into the chipper. It would be anatomically impossible to grab the control bar at all times during the feeding/chipping process. Therefore, even if it were a rule, Mr. Hardin had a valid excuse for violating it.

Because the Court holds that Mr. Hardin suffered a compensable injury, he is entitled to necessary and reasonable medical benefits. He proved his work-related injury was primarily responsible for his need for medical treatment.[6] Thus, the Court holds W.A. Kendall shall pay for all emergency treatment that Mr. Hardin received at the hospital in the amount of $72,482.

---

[5] The Court notes a slight discrepancy between Mr. Hardin's trial testimony and his deposition testimony, but the Court finds it inconsequential. Mr. Hardin repeated at trial on direct and cross as to what happened on the date of the injury. The Court notes he did not waiver in his testimony at trial.

[6] This information is contained in the C-32s from Drs. Lord and Brantner.

Mr. Hardin requested a panel of physicians for his compensable injury on January 31, 2017, which W. A. Kendall denied. The Court holds Mr. Hardin was reasonable in seeking treatment with Drs. Knox, Lord, and Brantner. W.A. Kendall shall pay for Mr. Hardin's prior treatment and ongoing medical treatment with these physicians that is related to his injury. As to Mr. Hardin's request for approval of Mr. Graybeal's prosthetic arm recommendations, the Court holds this issue is best left to physicians. Mr. Hardin must return to Dr. Knox or Dr. Lord for a determination of the prosthetic devices that are reasonable and necessary for his injury.[7]

Concerning temporary total disability benefits, Mr. Hardin must prove by a preponderance of the evidence: (1) a disability from working as the result of a compensable injury; (2) a causal connection between the injury and the inability to work; and (3) the duration of the period of disability. *Shepherd v. Haren Const. Co., Inc.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 15, at *13 (Mar. 30, 2016). Dr. Melissa Powell restricted Mr. Hardin's use of his right arm until he was cleared by an orthopedist. Dr. Lord found that Mr. Hardin's injury had caused him to miss work and did not place him at MMI until October 8, 2018. Thus, Mr. Hardin proved entitlement to temporary total disability benefits of $26,010.87.[8]

Regarding permanent partial disability benefits, an employee who establishes a partial disability from a compensable permanent injury is entitled to payment of permanent partial disability benefits for the number of weeks calculated by multiplying the applicable impairment rating by 450 weeks. Tenn. Code Ann. § 50-6-207(3)(A). These benefits are paid at the weekly compensation rate whether or not the employee returns to work. *Id.* The Workers' Compensation Law refers to this as the original award. Dr. Lord assigned a sixty percent impairment rating to the whole body.[9] Therefore, the Court finds he sustained a sixty percent permanent partial impairment. This equates to an original award of 270 weeks benefits or $78,281.10.

Finally, Mr. Hardin requested attorney fees for W.A. Kendall's wrongful denial of his claim. The Court holds Mr. Hardin is entitled to the requested fees.

Tennessee Code Annotated section 50-6-226(d)(1)(B) allows the Court to award reasonable attorney's fees and costs when an employer wrongfully denies a claim or fails

---

[7] Dr. Lord referred Mr. Hardin for a prosthetic-orthotic evaluation, and the Court found Prosthetist Graybeal qualified to testify as an expert at trial. However, the specific types of prosthetics recommended were not ordered by Dr. Lord or Dr. Knox.

[8] This amount represents eighty-nine weeks and five days, as 2016 was a leap year.

[9] Although Dr. Brantner's impairment rating was entered as exhibit twenty-four, Dr. Brantner never placed Mr. Hardin at MMI, and Mr. Hardin did not request permanent disability payments based on Dr. Brantner's rating in his pre-hearing statement or at trial.

to timely initiate benefits. At the time of Mr. Hardin's injury, the statute did not define the term "wrongfully." However, in a 2018 amendment, the Legislature defined "wrongfully" to mean "erroneous, incorrect, or otherwise inconsistent with the law or facts." In *Andrews v. Yates Serv., LLC*, 2018 TN Wrk. Comp. App. Bd. LEXIS 22 (May 8, 2018), the Appeals Board held that, although the amended definition does not directly apply to injuries prior to its enactment, like Mr. Hardin's injury, a court should "look to the new statute as persuasive authority in evincing the General Assembly's original intent." *Id.* at *9.

> In *Andrews*, the Board concluded that:

> a trial court may consider whether an employer's decision to deny a claim was erroneous, incorrect, or otherwise inconsistent with the law or *facts at the time the denial decision was made*. Thus, it is within a trial court's discretion to consider an employer's decision to deny a claim in light of evidence or other information reasonably available to the employer at the time the claim was denied.

*Id.* at *12 (Emphasis added).

Applying that authority here, the Court holds W. A. Kendall's actions at the time it denied Mr. Hardin's claim were erroneous, incorrect, and inconsistent with the facts. Namely, W.A. Kendall did not speak with Mr. Hardin before its denial, relied upon only circumstantial evidence,[10] and had no expert proof at that time which established Mr. Hardin's alleged misconduct. The investigation undertaken by W.A. Kendall "at the time the denial decision was made" was inadequate to establish its willful misconduct defense and, thus, was inconsistent with a complete picture of the facts as of the date of denial.

Therefore, the Court holds that Mr. Hardin should be awarded attorney fees. Mr. Hardin's attorney shall submit an accounting of his time and hourly rate with an affidavit for consideration of attorney fees. He shall also simultaneously submit a request for reasonable and necessary costs. W.A. Kendall shall have five business days to respond.

**IT IS, THEREFORE, ORDERED** as follows:

1. The Court designates Drs. Knox, Lord, and Brantner as Mr. Hardin's authorized physician. Mr. Hardin is awarded a judgment of $72,482 against W.A. Kendall for past medical expenses, and W. A. Kendall shall provide reasonable and necessary future medical treatment under Tennessee Code Annotated section 50-6-204(a)(1)(A).

2. Mr. Hardin is awarded a judgment of $26,010.87 against W.A. Kendall for past temporary total disability benefits.

---

[10] Mr. Hardin was the only eyewitness to the accident.

3. Mr. Hardin is awarded a judgment of $78,281.10 against W. A. Kendall for temporary total disability benefits. All incurred benefits shall be paid in lump sum with the remaining in weekly benefits.

4. Mr. Hardin's attorney shall submit an accounting of his time and hourly rate with an affidavit for consideration of attorney fees. He shall also simultaneously submit a request for reasonable and necessary costs. W.A. Kendall shall have five business days to respond.

5. W.A. Kendall shall pay $150.00 costs to the Court Clerk within five business days under Tennessee Compilation Rules and Regulations 0800-02-21-.07.

6. W.A. Kendall shall prepare and submit a Statistical Data Form (SD2) within five business days of this order becoming final.

7. W. A. Kendall failed to timely file a notice of denial or provide a panel to which Mr. Hardin was entitled. The Court refers the case to the Bureau's Compliance Unit for consideration of a penalty.

8. Absent an appeal, this order shall become final in thirty days after issuance.

**ENTERED this the 13th day of February, 2019.**

_/S/ Brian K. Addington_
**BRIAN K. ADDINGTON, JUDGE**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1. Statement of Understanding
2. Photo
3. Collective Exhibit-Photos (3)
4. Photo
5. Photo
6. Photo
7. Collective Exhibit-Photos (4)
8. Employee's Choice of Physician Form
9. Photo
10. Photo

11. Photo
12. Labor Training Manual
13. Test for Labor Training
14. Job Safety Analysis Form
15. Employee Handbook
16. Target Training Form
17. Collective Diagram (Deposition Exhibit 3)
18. Mentor Progress Sheet
19. MedicOne Medical Response
20. Johnson City Medical Center-Billing Statement
21. Photo
22. Johnson City Medical Center records
23. Standard Form Medical Report-Dr. Kent Lord
24. Standard Form Medical Report-Dr. Jim Brantner
25. Mortality Table
26. Prosthetist License of Will Graybeal
27. Orthotist License of Will Graybeal
28. Video-Limb Prosthetics
29. Recommended Prosthetic Hands Chart
30. Bristol Orthotics and Prosthetics records
31. Referral Order Dr. Benjamin Knox
32. Curriculum Vitae of Charles Coones
33. Forensic Investigations and Technologies preliminary report
34. Forensic Investigations and Technologies supplemental report
35. Demonstration video-Charles Coones
36. License Status Website (identification purposes)
37. Wage Statement
38. Notice of Denial of Claim
39. TOSHA Report (identification purposes)[11]
40. Video-Dr. Richard Ziernicki
41. Analysis of the Hazards of Wood Chipper Accidents
42. Video-W.A. Kendall demonstration video
43. Kendall Record of Instruction or Correction
44. Collective Exhibit-Photos (47)
45. New employee training video
46. Brandon Moore's Deposition
47. Brandon Moore's Affidavit
48. Affidavit of Criminal Complaint, Brandon Moore
49. Criminal Court Judgment, Brandon Moore

---

[11] The Court reserved ruling on the admissibility of this document until it had an opportunity to review the Appeals Board's decision in *Kizer v. Express Servs. Inc.*, 2018 TN Wrk. Comp. App. Bd. LEXIS 17 (Apr. 20, 2018). Based on the holding in *Kizer*, the Court finds W.A. Kendall did not lay a proper foundation for this document.

50. Criminal Plea, Brandon Moore
51. Robert Williams' Deposition
52. Letter dated January 31, 2017
53. Email
54. Handwritten statements (identification purposes)


Technical Record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Employer's Motion to Compel HIPAA Release
4. Employee's Response to Motion to Compel HIPPA Release
5. Order Compelling Discovery
6. Employee's Notice of Compliance
7. Employee's Request for Scheduling Hearing
8. Scheduling Hearing Order
9. Employee's Motion for Permission to Serve Additional Interrogatories
10. Order Granting Additional Interrogatories
11. Employee's Motion to Amend Scheduling Order
12. Employer's Response to Motion to Amend
13. Order Granting Extension of Deadlines
14. Employer's Witness List
15. Employee's Witness List
16. Employee's Notice of Intent to Use C-32
17. Employer's Motion to File a Brief Exceeding Ten Pages
18. Employee's Motion in Limine
19. Employee's Motion to Exclude Discovery Depositions
20. Employee's Motion to Compel Expert Witness' Investigative File
21. Employee's Motion to File a Brief Exceeding Ten Pages
22. Post Discovery DCN
23. Employer's Response to Motion to Exclude Discovery Depostions
24. Employer's Response to Motion in Limine
25. Employee's Objection to Employer's Untimely Filing of Responses to Motions
26. Court Order on Motions
27. Employee's List of Proposed Exhibits
28. Employee's Pre-Compensation Hearing Statement
29. Employee's Pre-Compensation Hearing Brief
30. Employer's List of Proposed Exhibits
31. Employer's Pre-Compensation Hearing Statement
32. Employer's Notice of Filing Proposed Exhibits
33. Employer's Pre-Hearing Brief

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the Order was sent to the following recipients by the following methods of service on February 13 , 2019.

| Name | Certified Mail | Fax | Email | Service sent to: |
|------|----------------|-----|-------|------------------|
| Gregory Haden, Employee's Attorney | | | X | ghaden@hsdlaw.com |
| Todd Heird, Employer's Attorney | | | X | tiheird@mijs.com |
| Compliance Program | | | X | WCCompliance.Program@tn.gov |

**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov

11



<u>Compensation Hearing Order Right to Appeal</u>:

If you disagree with this Compensation Hearing Order, you may appeal to the Workers' Compensation Appeals Board or the Tennessee Supreme Court. To appeal to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Compensation Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the compensation hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. A licensed court reporter must prepare a transcript and file it with the court clerk *within fifteen calendar days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the court clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties. The appealing party has *fifteen calendar days* after the date of that notice to submit a brief to the Appeals Board. *See the Practices and Procedures of the Workers' Compensation Appeals Board.*

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Hearing Order must be final and you must comply with the Tennessee Rules of Appellate Procedure. If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry.** *See* **Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# COMPENSATION HEARING NOTICE OF APPEAL

Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

**Docket #:** _____

**State File #/YR:** _____

_____

**Employee**

v.

_____

**Employer**

### Notice

Notice is given that _____
[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____to the Workers' Compensation Appeals Board.
[List the date(s) the order(s) was filed in the court clerk's office]

**Judge**_____

### Statement of the Issues

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

### List of Parties

**Appellant (Requesting Party):**_____ At Hearing: ☐Employer ☐Employee

Address:_____

Party's Phone:_____ Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ SF#: _____ DOI: _____

## Appellee(s)

**Appellee (Opposing Party):**_____At Hearing:☐Employer☐Employee

Appellee's Address: _____

Appellee's Phone: _____Email:_____

Attorney's Name: _____ BPR#: _____

Attorney's Address: _____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____ , certify that I have forwarded a true and exact copy of this Compensation Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules of Board of Workers' Compensation Appeals on this the_____day of_____, 20___.

[Signature of appellant or attorney for appellant]          _____

Attention: This form should only be used when filing an appeal to the Workers' Compensation Appeals Board. If you wish to appeal a case to the Tennessee Supreme Court, please utilize the form provided by the Court which can be found on their website at the following address: http://www.tncourts.gov/sites/default/files/docs/notice_of_appeal_-_civil_or_criminal.pdf



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____

2. Address: _____

3. Telephone Number: _____

4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning | _____ |
| SSI | $ _____ per month | beginning | _____ |
| Retirement | $ _____ per month | beginning | _____ |
| Disability | $ _____ per month | beginning | _____ |
| Unemployment | $ _____ per month | beginning | _____ |
| Worker's Comp. | $ _____ per month | beginning | _____ |
| Other | $ _____ per month | beginning | _____ |

LB-1108 (REV 11/15)                                                                                                    RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month          Medical/Dental  $ _____ per month

Groceries          $ _____ per month          Telephone       $ _____ per month

Electricity        $ _____ per month          School Supplies $ _____ per month

Water              $ _____ per month          Clothing        $ _____ per month

Gas                $ _____ per month          Child Care      $ _____ per month

Transportation     $ _____ per month          Child Support   $ _____ per month

Car                $ _____ per month

Other              $ _____ per month (describe: _____ )

10. Assets:

Automobile              $ _____    (FMV) _____

Checking/Savings Acct. $ _____

House                   $ _____    (FMV) _____

Other                   $ _____    Describe:_____

11. My debts are:

Amount Owed                      To Whom

_____          _____

_____          _____

_____          _____

_____          _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires:_____